UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**RODNEY HILL,**

    **Plaintiff,**

    v.                                     **Case No. 23-CV-1177-SCD**

**KAMILJIT SAINI,**

    **Defendant.**

## DECISION AND ORDER CONVERTING DEFENDANT'S MOTION TO A MOTION FOR SUMMARY JUDGMENT

    Rodney Hill claims that Racine County Deputy Sheriff Kamiljit Saini illegally seized him during a traffic stop on October 17, 2022. ECF No. 1 at 3. Seeking damages for this alleged constitutional violation, Hill filed a civil rights action against Racine County, Racine County Sheriff Christopher Schmaling, and Deputy Saini. *Id.* at 1. On January 18, 2024, I dismissed the claims against Racine County and Sheriff Schmaling. ECF No. 21. Hill filed a motion to compel discovery from the remaining defendant, Deputy Saini, on May 29, 2024. ECF No. 33. While the parties were briefing that motion, Deputy Saini filed a motion for judgment on the pleadings. ECF No. 37. As explained below, the defendant's motion for judgment on the pleadings will be converted to a motion for summary judgment. The plaintiff will be afforded the opportunity to respond.

## BACKGROUND

    According to Hill's complaint, Deputy Saini stopped and detained Hill (handcuffed and in a police vehicle) without legal justification. ECF No. 1 at 3. The defendants incorporated the body-worn camera footage of three deputies involved in the traffic stop into

their answer and affirmative defenses. *See* ECF No. 11 at 3 n.1; Exhibits A (Dep. Saini), B (Dep. Poelmann), and C (Dep. Beall) to ECF No. 11 (10/17/22 Video, No. 22-58043—available in hard copy only).

Deputy Saini's recording reflects that he initiated a traffic stop of Hill's vehicle on an eight-lane highway[1] with a speed limit of 70 miles per hour (mph). Ex. A to ECF No. 11 at 8:20, 09:35–10:03. After both parties safely stopped their vehicles on the right shoulder, Deputy Saini walked to the passenger side of Hill's vehicle and informed Hill that he had been driving roughly 40mph on the highway. *Id.* at 10:08–10:16. The pair briefly discussed Hill's eyesight and lack of other relevant medical issues. *Id.* at 10:18–10:36. Deputy Saini asked for Hill's driver's license and proof of insurance. *Id.* at 10:42–10:45. When Deputy Saini returned to his vehicle, Deputy Beall (who had pulled over as back up) advised Deputy Saini that she requested a K-9 unit come to the scene. *Id.* at 11:54–11:55. Deputy Saini said that Hill slowed down all the way to 39mph at one point, to which Deputy Beall responded that she also observed this conduct and was going to pull Hill over if Deputy Saini had not done so. *Id.* at 12:03–12:13. Deputy Saini ran Hill's information through the computer system and prepared paperwork for the citation (impeding traffic by slow speed). *Id.* at 12:30–20:10. During this time, Deputy Beall commented on Hill's "antsy" behavior and observed that he appeared to be "reaching around a lot, moving stuff around." *Id.* at 13:10–13:14, 15:12–15:14. Before Deputy Saini finished processing the citation, Deputy Poelmann (the K-9 handler) arrived on the scene. *Id.* at 18:00.

---

[1] Hill claims that Deputy Saini mistakenly identifies the roadway as Highway 41 when the stop actually occurred on Highway 43. ECF No. 42 at 2. But the video recording reflects that the parties were on U.S. Highway 41/94. Ex. A to ECF No. 11 at 03:42.

After printing the citation, Deputy Saini approached Hill's vehicle on the driver side and instructed Hill to step out and come to the back of the vehicle so that he could explain the citation. *Id.* at 20:10–21:12. While Deputy Saini spoke with Hill, Deputy Poelmann walked his dog around Hill's vehicle. *Id.* at 20:46–20:56. Before Deputy Saini finished explaining the citation, Deputy Poelmann radioed back to Deputies Saini and Beall that the dog had alerted. *Id.* at 20:56–20:58; *see also* Ex. B to ECF No. 11 at 04:28–04:30. When Deputy Saini finished explaining the citation, he handed the paperwork to Deputy Beall and asked Hill to turn around with his hands behind his back. Ex. A to ECF No. 11 at 21:09–21:15. Deputy Saini advised Hill that the dog alerted on his car, placed Hill in handcuffs, and asked Hill if there was anything in his car that the officers should know about. *Id.* at 21:15–21:43. Hill denied that there was anything of concern in his vehicle. *See id.* Deputy Saini patted Hill down and guided him into the back of his patrol car. *Id.* at 21:46–22:40. Deputies Saini and Poelmann searched Hill's entire vehicle and found no contraband. *Id.* at 22:55–29:00. Deputy Saini released Hill from the back of the vehicle and removed the handcuffs. *Id.* at 29:16–29:41. Deputy Saini asked Hill if he had any questions and if he understood the reason that he pulled him over, to which Hill confirmed that he understood and did not have any questions. *Id.* at 29:46–29:56. Deputy Saini told Hill that he was free to go. *Id.* at 29:56–30:00.

In September 2023, Hill filed an action in federal court for damages under 42 U.S.C. § 1983. *See* ECF No. 1. The clerk of court randomly assigned the matter to Judge Stadtmueller, who reassigned the case to me after all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), *see* ECF Nos. 4, 10, 12, 13. Hill filed a motion to compel discovery from Deputy Saini under Rule 37 of the Federal Rules of Civil Procedure. ECF No. 33. Deputy Saini filed a response to that motion, ECF

No. 36, and Hill filed a reply brief, ECF No. 39. While the parties were briefing that motion, Deputy Saini filed a motion for judgment on the pleadings under Rule 12(c). ECF No. 37. Hill filed a brief in response to the Rule 12(c) motion, ECF No. 42, and Deputy Saini filed a brief in reply, ECF No. 44.

## LEGAL STANDARD

"Rule 12(c) permits a party to move for judgment after the complaint and answer have been filed by the parties." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing Fed. R. Civ. P. 12(c)). Courts review Rule 12(c) motions for judgment on the pleadings under the same standard as a motion to dismiss under Rule 12(b)(6). *See Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016). Accordingly, "[t]o survive a motion for judgment on the pleadings, 'a complaint must state a claim to relief that is plausible on its face.'" *Denan v. Trans Union LLC*, 959 F.3d 290, 293 (7th Cir. 2020) (quoting *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018)).

"When assessing the facial plausibility of a claim, '[the court] view[s] the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *Id.* (quoting *Buchanan-Moore*, 570 F.3d at 827). "Although [the court] accept[s] the well-pleaded facts . . . district courts are free to consider 'any facts set forth in the complaint that undermine the plaintiff's claim.'" *Esco v. City of Chi.*, 107 F.4th 673, 678 (7th Cir. 2024) (quoting *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)). "The court,

therefore, may examine exhibits, including video exhibits, attached to the complaint, or referenced in the pleading if they are central to the claim." *Id.*

## ANALYSIS

The twist in this case is that the video underlying the defendant's motion was not attached to the complaint, nor is it even referred to in the complaint. As such, it is not obvious that the video may be considered in the context of a motion for judgment on "the pleadings." This is true even if the defendant attempted to incorporate the video into his own answer. In the Ninth Circuit, for example, some district courts have taken a dim view of efforts to consider video evidence on Rule 12(b) or 12(c) motions. *See, e.g.*, *Lee v. City of San Diego,* No. 18CV0159 W (BLM), 2019 WL 117775, at *5 (S.D. Cal. Jan. 7, 2019) (noting that the complaint "does not refer to the videos, and while they—like witness statements and other evidence—are important in helping the trier of fact understand the circumstances, Lee's claims are not based on the videos.")

Some circuit courts that have considered the question recently have come to the opposite conclusion. In the Eleventh Circuit, for example, the court found that a "court may properly consider a document [or video] not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta,* 107 F.4th 1292, 1300 (11th Cir. 2024). And the Eighth Circuit has also concluded that "[v]ideos of an incident are necessarily embraced by the pleadings" and therefore may be considered in adjudicating a motion for judgment on the pleadings. *Ching v. City of Minneapolis,* 73 F.4th 617, 621 (8th Cir. 2023). A complaint's allegations should not be accepted "if they are

blatantly contradicted by video evidence." *Waters v. Madson,* 921 F.3d 725, 734 (8th Cir. 2019) (cleaned up).

The Seventh Circuit has apparently not explicitly ruled on the question, but its holdings on incorporation have consistently suggested that documents or other matters must be referred to in the complaint before they may be considered at the pleadings stage. *See Bogie,* 705 F.3d at 609 (noting that it would make "eminently good sense" to apply these principles to video recordings attached to or referenced in a complaint) (quoting *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690–91 (7th Cir. 2012)). Very recently, in *Esco v. City of Chicago*, the Seventh Circuit found it proper to consider body-worn camera video at the pleadings stage, but it noted that the plaintiff "relied on [the video] for the allegations in his complaint that the officers 'can be heard on body-worn camera discussing the fact that Plaintiff was not the individual they saw with the gun.'" 107 F.4th at 678. "The court, therefore, may examine exhibits, including video exhibits, attached to the complaint, or referenced in the pleading if they are central to the claim." *Id.* The circuit's pronouncements on this issue consistently imply that matters *not* referred to in the complaint are off-limits at this stage. *See Bogie,* 705 F.3d at 608 (noting that "Bogie incorporated the video recording into her original complaint both by reference and by physically attaching the video recording to the amended complaint.")

Given the increasing ubiquity of body-worn camera videos, it might seem unduly formalistic to preclude consideration of such videos unless the complaint explicitly refers to, or incorporates, the video. But that is a subject to take up with the rule makers and the courts of appeals. In any event, the fact that I am unable to consider videos at the pleadings stage here does not necessarily mean video evidence may not be considered early-on in federal

6

proceedings. Instead, Rule 12(d) allows a court to consider matters outside the pleadings by converting the motion to a motion for summary judgment. Rule 12(d) is clear: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The purpose of the distinction is not merely one of nomenclature; it's to give notice and an opportunity to be heard to the non-movant. A court should thus give both parties "a reasonable opportunity to present all the material that [was] pertinent to the motion." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.,* 983 F.3d 307, 316 (7th Cir. 2020).

    The motion for judgment on the pleadings will therefore be considered a motion for summary judgment. The plaintiff will be afforded the opportunity to respond to the defendant's motion so he may explain what additional facts, if any, he believes must be considered with regard to the video evidence the defendant has provided. He may also provide those additional facts, for example, by affidavit or declaration. The central question at this stage is whether there is anything about the body-worn camera video that does not tell the full story—for example, is there reason to question the video's authenticity, or is there a missing video that would show something different, etc. In other words, would there be anything unfairly prejudicial about considering the videos at this stage of the proceedings without allowing further discovery regarding those videos? This does not mean the video, if

7

considered, will necessarily be dispositive; the question is simply whether the court needs any additional information or facts before it considers the video evidence.²

I am mindful that there are other facts not presently before the court. The plaintiff has filed a motion to compel answers to interrogatories that speak to some of those questions. Those matters will be addressed if I conclude either (1) the video evidence does not tell the full story or (2) the video does tell the full story but does not entitle the defendant to summary judgment.

The plaintiff's submissions are due **October 15, 2024**. Any reply from the defendant is due **November 3, 2024**.

**SO ORDERED** this 4th day of September, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge

---

² The plaintiff's response to the motion already explains why he doesn't think the video is dispositive. He need not repeat those arguments.