# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RODNEY HILL,**

    **Plaintiff,**

    v.                                                                                       Case No. 23-CV-1177-SCD

**KAMILJIT SAINI,**

    **Defendant.**

## DECISION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    Rodney Hill sued Racine County Deputy Sheriff Kamiljit Saini for allegedly violating his constitutional rights during a traffic stop. ECF No. 1. On May 29, 2024, Hill filed a motion to compel discovery from Deputy Saini. ECF No. 33. While the parties were briefing that motion, Deputy Saini filed a motion for judgment on the pleadings. ECF No. 37. To avoid prematurely considering the officers' body-worn cameras, I converted the motion for judgment on the pleadings into a motion for summary judgment. *See* ECF No. 45. Based on my analysis of that briefing herein, Deputy Saini is entitled to judgment as a matter of law. Therefore, Hill's motion to compel discovery is moot.

## BACKGROUND

    According to Hill's complaint, Deputy Saini stopped and detained Hill (handcuffed and in a police vehicle) without legal justification. ECF No. 1 at 3. The record includes the body-worn camera footage of three deputies involved in the traffic stop. *See* ECF No. 11 at 3 n.1; Exhibits A (Dep. Saini), B (Dep. Poelmann), and C (Dep. Beall) to ECF No. 11 (10/17/22 Video, No. 22-58043—available in hard copy only).

In my order converting Deputy Saini's motion to one for summary judgment, I directed Hill to address what additional facts should be considered with regard to the video evidence. ECF No. 45 at 7. For example, I queried whether there is any reason to question the authenticity of those videos, whether there might be a missing video that would show something different, and whether any unfair prejudice would result from considering the videos at this stage of the proceedings (without allowing further discovery regarding the videos). *Id.* I specifically advised Hill that he need not repeat his arguments about why he believes the video evidence is not dispositive. *Id.* at 8 n.2. Nevertheless, Hill merely reiterates those arguments in his response brief, making no mention of the video's authenticity or otherwise challenging my consideration thereof. *See* ECF No. 46. Accordingly, I will repeat and rely on my factual observations from the video evidence. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007) (holding that, where there are "no allegations or indications" that video was altered or that it did not depict what actually happened, a court must view "the facts in the light depicted by the videotape").

Deputy Saini's recording reflects that he initiated a traffic stop of Hill's vehicle on Interstate 94, where the speed limit was 70 miles per hour (mph). Ex. A to ECF No. 11 at 8:20, 09:35–10:03; *see also* ECF No. 47 at 3 n.4 (clarifying the location of the stop). After both parties safely stopped their vehicles on the right shoulder, Deputy Saini walked to the passenger side of Hill's vehicle and informed Hill that Hill had been driving roughly 40mph on the highway. ECF No. 11 at 10:08–10:16. The pair briefly discussed Hill's eyesight and lack of other relevant medical issues. *Id.* at 10:18–10:36. Deputy Saini asked for Hill's driver's license and proof of insurance. *Id.* at 10:42–10:45. When Deputy Saini returned to his vehicle, Deputy Beall (who had pulled over as back up) advised Deputy Saini that she requested a K-

9 unit come to the scene. *Id.* at 11:54–11:55. Deputy Saini said that Hill slowed down all the way to 39mph at one point, to which Deputy Beall responded that she also observed this conduct and was going to pull Hill over if Deputy Saini had not done so. *Id.* at 12:03–12:13. Deputy Saini ran Hill's information through the computer system and prepared paperwork for the citation (impeding traffic by slow speed). *Id.* at 12:30–20:10. During this time, Deputy Beall commented on Hill's "antsy" behavior and observed that he appeared to be "reaching around a lot, moving stuff around." *Id.* at 13:10–13:14, 15:12–15:14. Before Deputy Saini finished processing the citation, Deputy Poelmann (the K-9 handler) arrived on the scene. *Id.* at 18:00.

After printing the citation, Deputy Saini approached Hill's vehicle on the driver side and instructed Hill to step out and come to the back of the vehicle so that he could explain the citation. *Id.* at 20:10–21:12. While Deputy Saini spoke with Hill, Deputy Poelmann walked his dog around Hill's vehicle. *Id.* at 20:46–20:56. Before Deputy Saini finished explaining the citation, Deputy Poelmann radioed back to Deputies Saini and Beall that the dog had alerted. *Id.* at 20:56–20:58; *see also* Ex. B to ECF No. 11 at 04:28–04:30. When Deputy Saini finished explaining the citation, he handed the paperwork to Deputy Beall and asked Hill to turn around with his hands behind his back. Ex. A to ECF No. 11 at 21:09–21:15. Deputy Saini advised Hill that the dog alerted on his car, placed Hill in handcuffs, and asked Hill if there was anything in his car that the officers should know about. *Id.* at 21:15–21:43. Hill denied that there was anything of concern in his vehicle. *See id.* Deputy Saini patted Hill down and guided him into the back of his patrol car. *Id.* at 21:46–22:40. Deputies Saini and Poelmann searched Hill's entire vehicle and found no contraband. *Id.* at 22:55–29:00. Deputy Saini released Hill from the back of the vehicle and removed the handcuffs. *Id.* at

3

29:16–29:41. Deputy Saini asked Hill if he had any questions and if he understood the reason that he pulled him over, to which Hill confirmed that he understood and did not have any questions. *Id.* at 29:46–29:56. Deputy Saini told Hill that he was free to go. *Id.* at 29:56–30:00.

In September 2023, Hill filed an action in federal court for damages under 42 U.S.C. § 1983. *See* ECF No. 1. The clerk of court randomly assigned the matter to Judge Stadtmueller, who reassigned the case to me after all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), *see* ECF Nos. 4, 10, 12, 13. Hill filed a motion to compel discovery from Deputy Saini under Rule 37 of the Federal Rules of Civil Procedure. ECF No. 33. While the parties were briefing that motion, Deputy Saini filed a motion for judgment on the pleadings under Rule 12(c). ECF No. 37. I entered an order converting Deputy Sani's Rule 12(c) motion into a motion for summary judgment under Rule 56. *See* ECF No. 45. Accordingly, Hill filed a response, ECF No. 46, and Deputy Saini filed a brief in reply, ECF No. 47.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

4

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, I must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "However, [my] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in [its] favor." *Id.* (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

## DISCUSSION

"Section 1983 of Title 42 authorizes a federal cause of action against any person who, acting under color of state law, deprives another of rights secured by federal law or the United States Constitution." *Wollin v. Gondert*, 192 F.3d 616, 621 (7th Cir. 1999). Hill claims that Deputy Saini violated his right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. See ECF Nos. 1 at 3, 46 at 14–23.

Beginning with the traffic stop itself, the Supreme Court has held that "a routine traffic stop is more analogous to a so-called *Terry* stop than to a formal arrest." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (cleaned up) (quoting *Knowles v. Iowa*, 525 U.S. 113, 117

5

(1998)). "Thus, reasonable suspicion of a traffic violation provides a sufficient basis to justify a traffic stop." *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020). "To meet the reasonable-suspicion requirement, an officer must have 'a particularized and objective basis' for suspecting the persons detained of breaking the law." *United States v. Rodriguez-Escalera*, 884 F.3d 661, 668 (7th Cir. 2018) (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)). "Although reasonable suspicion 'embodies something less than probable cause,' it requires more than a hunch or inchoate suspicion." *Id.* (quoting *United States v. Wilbourn*, 799 F.3d 900, 909 (7th Cir. 2015)).

Here, Hill disputes that he slowed down to 39mph on the highway and maintains that he did not impede traffic. ECF No. 46 at 2–3. As evidence therefor, Hill points out that he pled guilty to an amended charge related to standing, stopping, or parking. *See id.* at 11. Hill also emphasizes that Deputy Saini was driving 45mph when Hill passed him on the right. *Id.* at 10. This observation relies on Deputy Saini's video footage reflecting his speedometer and implicitly concedes the accuracy of this device. *See id.* (citing Ex. A to ECF No. 11 at 9:18). With this assumption in mind, the video reflects that Hill must have been driving at or near 45mph on the Interstate before Deputy Saini initiated the stop. *See* Ex. A. to ECF No. 11 at 9:17–9:32. Moreover, Hill admits that he slowed down to go behind Deputy Saini's vehicle from the left side, which would have occurred just before the video depicts Hill coming into view at this speed on the right side. *See* ECF No. 46 at 10. Hill also acknowledges that he told Deputy Saini he slowed down because he was looking for his eye glass cleaner. *Id.* at 11.

Wisconsin Statute § 346.59 prohibits any person from driving a motor vehicle "at a speed so slow as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or is necessary to comply with the law."

6

Regardless of whether Hill pled guilty to the citation Deputy Saini issued under this statute or an amended charge, the standard for a lawful traffic stop requires the officer involved to reasonably suspect that a violation of a traffic law occurred. *See Jackson*, 962 F.3d at 357. It is not statutorily tied to a defined "slow" speed. Even if Hill did not slow down to 39mph exactly, Hill's admittedly slow speed on a major highway adequately supports that suspicion here.

To the extent that Hill disputes the significance of his speed under the circumstances, the video recording supplies sufficient context. *See Scott*, 550 U.S. at 378–81. Hill does not dispute the accuracy of the recording, which reflects no weather or other safety concerns. Deputy Saini's recording reflects that traffic was relatively light, but several vehicles (including semi-trailer trucks) passed by immediately after Deputy Saini stopped Hill. *See* Ex. A to ECF No. 11 at 09:46–10:08. Deputy Saini did not have to wait for Hill's slow speed to cause an accident before investigating. Under these circumstances, no genuine dispute of material fact exists, and the record clearly reflects that Deputy Saini could have reasonably suspected Hill of violating Wisconsin's minimum speed regulation. *See* Wis. Stat. § 346.59. Hill even conceded that he violated a traffic law when he pled guilty to the amended charge related to this stop. *See* ECF No. 46 at 11. Because reasonable suspicion of a traffic violation sufficiently justifies a stop, Hill cannot prove any facts to support a claim for unlawful seizure based on the traffic stop.

Deputy Saini also claims that Hill cannot prove he impermissibly extended the traffic stop. ECF No. 38 at 7–9. Hill argues that Deputy Saini asked Hill to exit his vehicle under the auspices of explaining the citation, but Deputy Saini's true intention was to afford time for the dog to sniff Hill's vehicle. ECF No. 46 at 11. A seizure justified by a police-observed traffic

violation "becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez*, 575 U.S. at 350–51 (cleaned up) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). "Beyond determining whether to issue a traffic ticket, an officer's mission during a traffic stop typically includes checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* Hill does not allege that Deputy Saini took too long to carry out these activities or exceeded their scope.[1]

Hill maintains that Deputy Saini should not have asked him to exit the vehicle to explain the citation. ECF No. 42 at 3–4. But this argument holds no water. "Rather than conversing while standing exposed to moving traffic," Deputy Saini could request that Hill exit the vehicle. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (holding "that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures"). While Deputy Saini first spoke to Hill from the passenger side window, the law did not require him to elect this approach. *See id.* Moreover, Deputy Poelmann radioed back to Deputies Saini and Beall that the dog had alerted on Hill's vehicle within thirty seconds of Hill exiting his vehicle, before Deputy Saini finished explaining the citation. Ex. A to ECF No. 11 at 20:28–20:58. This tight and overlapping timeline clearly demonstrates that Deputy Saini did not extend the traffic stop only to facilitate the dog sniff. In fact, the sequence of events logically suggests that Deputy Saini asked Hill to exit the vehicle for safety reasons—not because of the time it would take for a sniff. The dog

---

[1] Hill disputes that Deputy Saini ran his information through the computer system at all, *see* ECF No. 46 at 4, but this allegation is directly contradicted by video evidence. *See* Ex. A to ECF No. 11 at 12:25–13:57, 17:55–19:19 (running information through system and discussing Hill's criminal history with Deputy Beall).

sniff occurred within the confines of a lawful traffic stop. *See Caballes*, 543 U.S. at 409 (holding use of a narcotic dog during a traffic stop does not violate the Fourth Amendment's protection against unreasonable seizures, even if there is no particular evidence of drugs prior to the dog sniff). Therefore, Hill cannot establish an unlawful seizure occurred when Deputy Saini asked him to exit his vehicle.

Finally, Deputy Saini argues that Hill cannot establish a civil rights violation with respect to the vehicle search and Hill's detention in handcuffs in the squad car. ECF No. 38 at 9–12. Hill contends that this conduct constituted an illegal search and seizure because the dog never actually alerted on his vehicle. ECF No. 46 at 12, 16–17. However, Deputy Saini relied on the indication from Deputy Poelmann that the dog had alerted. *See* Ex. A to ECF No. 11 at 20:56–20:58. Hill offers no reason why Deputy Saini should have questioned Deputy Poelmann's notification. *See* ECF Nos. 1, 46. Therefore, at the very least, Deputy Saini is entitled to qualified immunity for relying on the probable cause presented by Deputy Poelmann. *See Santiago v. United States*, No. 20 C 6371, 2022 WL 375516, at *5 (N.D. Ill. Feb. 8, 2022) ("[W]here a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed.") (quoting *Duran v. Sirgedas*, 240 F. App'x 104, 115 (7th Cir. 2007)).

Hill maintains that, even if the dog alerted, a dog's alert is insufficient to justify seizing an individual who is not obviously dangerous, a flight risk, or involved in narcotics distribution. ECF No. 46 at 19–23. Hill's position is misguided. First of all, a positive alert by a trained narcotics dog gives rise to probable cause for police officers to search a vehicle. *See*

9

*United States v. Trejo*, 69 F. App'x 811, 813 (7th Cir. 2003) (observing that the dog's "alert alone provided probable cause to search the van for drugs"). During that permissible search, detention of the individual(s) associated with the vehicle is entirely reasonable. *See United States v. Johnson*, 331 F. App'x 408, 410 (7th Cir. 2009) (noting that "officers had probable cause to search *and arrest*" when the dog alerted on the defendant's vehicle) (emphasis added); *see also Michigan v. Summers*, 452 U.S. 692, 705 (1981) (concluding that "it is constitutionally reasonable to require [a] citizen to remain while officers of the law execute a valid warrant to search his home"). Therefore, Deputy Saini was justified in detaining (seizing) Hill during the vehicle search. *See id.*

Hill has not raised a claim for excessive force in executing the detention. *See* ECF Nos. 1, 46. Nevertheless, Deputy Saini argues that the totality of the circumstances justified his decision to handcuff Hill and place him in the back of his vehicle. *See* ECF Nos. 38 at 9–12, 47 at 26–29. In *United States v. Bullock*, the Seventh Circuit held that "[g]iven that officers were conducting a search for drugs, it was reasonable to place Bullock in handcuffs and in the squad car for their safety while they pursued their investigation." 632 F.3d 1004, 1016 (7th Cir. 2011). Hill attempts to distinguish *Bullock* because officers in that case had an "articulable basis for suspecting that Bullock was engaged in drug activity" and Bullock was aware of a residential search warrant being executed simultaneously with his traffic stop. ECF No. 46 at 19–20 (citing *Bullock*, 632 F.3d at 1016). But the circumstances are not that dissimilar. After all, Deputy Saini had probable cause from the dog's alert, and Hill knew the officers were going to search his car for drugs. Therefore, despite the unremarkable pat down, Deputy Saini could reasonably believe that Hill "was potentially dangerous and a flight risk." *See Bullock*, 632 F.3d at 1016. ("Drug crimes are associated with dangerous and violent behavior and

10

warrant a higher degree of precaution.") (quoting *United States v. Askew*, 403 F.3d 496, 508 (7th Cir.2005)). The officers involved in *Bullock* may have had more extensive evidence underpinning their suspicion of drug activity. But regardless, "[t]he question is whether the officer's actions were reasonable under the circumstances and whether the surrounding circumstances gave rise to a justifiable fear for personal safety on the part of the officer." *Id.* Given the nature of the search and the parties' location on the side of a major highway, there is no question that a reasonable jury would find Deputy Saini's manner of detention was reasonable. Therefore, Hill cannot prove any facts to support a claim for unlawful seizure based on the use of handcuffs and placement in the back of the police vehicle.

In sum, Hill needed to prove that reasonable officers could not have found reasonable suspicion to stop and detain him. Deputy Saini's reasonable suspicion of a traffic violation related to slow speed justified the stop of Hill's vehicle. The dog sniff occurred within the time it took to execute that lawful traffic stop, and the dog's handler advised Deputy Saini that the dog alerted to the presence of narcotics. Therefore, Deputy Saini lawfully detained Hill during the officers' search of his vehicle. Because Deputy Saini had the requisite evidence at each of these junctures, he is entitled to judgment as a matter of law.

## CONCLUSION

For all the foregoing reasons, the court **GRANTS** the defendant's motion for summary judgment, ECF No. 37. The plaintiff's motion to compel discovery, ECF No. 33, is **DENIED AS MOOT**. The action is dismissed with prejudice. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 19th day of November, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge